Exhibit E



MR. LIPSEY: There are mutiple motions here, Your Honor. There was a case originally filed. You were involved in this case on different aspects with respect to the children who were taken out of the State--out of the jurisdiction of the State of Rhode Island. John Lynch represented Mr. Duke, and I have a mental block as to who the attorney was that represented Mrs. Duke. The matter then went to trial on the merits before Judge Crouchley. An Appeal was taken from his Decision to the Supreme Court which is still pending. I'm in the case. I've been in the case for some months now.

THE COURT: Who took the Appeal?

MR. LIPSEY: Plaintiff took the Appeal, Mrs. Duke.

THE COURT: Mrs. Duke?

MR. LIPSEY: That's correct. There are outstanding Orders that you entered and Judge Goldberg entered. The matter had been referred to the Investigation Unit of the Family Court. Also, Judge Bedrosian was involved at one time. This was before I was ever involved in the case. And, Jamie Nero has done counseling over a period of time, and I have a letter here of the fact that the case was on the calendar for her testimony. Among the motions is a series of motions filed by Mr. Duke as well as Mrs. Duke. Among the motions that Mrs. Duke has filed, there are two young children going to nursery school, and

PENGAD CO., BAYONNE, N.J. 07002 · FORM 740

to seek some funds from fifty percent contribution by Mr. Duke, who is a Providence Fireman, to contribute towards that education. Also to get his dentist card through his plan with the City of Providence so that the children will have the benefit of that. And, in addition to that, as you will see by nature of some of the motions, there is also Motion For Psychiatric Examination and also to try to work out visitations which has been horrendous problem for some period of time. I might say that I have written two letters to Mr. Duke asking him if he wants to sit down and try to come to some resolution of it and there has been no reply to those.

THE COURT: What are the other motions?

MR. LIPSEY: I might as well let him speak for himself.

MR. DUKE: I have a new motion. I have a few motions. One is to reopen the case.

THE COURT: Reopen what?

MR. DUKE: The trial, Your Honor.

THE COURT: I can't do that if that case is pending in the Supreme Court.

MR. DUKE: Pardon me?

THE COURT: If the case is pending in the Supreme Court and Decision been made, I can't do that.

MR. DUKE: Okay, Your Honor. I have a Motion For

24

PENGAD CO., BAYONNE, N.J. 07002 · FORM 740

Contempt.

THE COURT: What's the nature of the contempt?

MR. DUKE: Contempt, Your Honor, is numerous acts of violence have been occuring by the Plaintiff. False arrest against myself. An allegation by the Plaintiff. There is a motion by myself for psychiatric evaluation on the Plaintiff because, Your Honor, I feel as though she does not know right from wrong.

THE COURT: Who does not know right from wrong?

MR. DUKE: I feel--I believe Plaintiff does not know right from wrong, Your Honor.

THE COURT: You think so?

MR. DUKE: Yes.

THE COURT: And that she have a psychiatric evaluation?

MR. LIPSEY: I filed one.

THE COURT: That's two.

MR. LIPSEY: But I'm not saying--It's not a question of right from wrong, Your Honor. There are some serious problems here.

THE COURT: Well, I think you ought to have both parties evaluated.

MR. LIPSEY: We have no objections to that.

THE COURT: All right.

MR. DUKE: I was hoping possibly hear contempt today,



PENGAD CO., BAYONNE, N.J. 07002 - FORM 740

and I feel pieces start to unfold what problem here is.

THE COURT: What contempt?

MR. DUKE: Contempt of visitations, Your Honor.

THE COURT: On visitations. Well, you acknowledge there's problem with visitations as well?

MR. LIPSEY: Oh, there's been some substantial ones.

THE COURT: Has this case been argued in the Supreme Court?

MR. LIPSEY: No, Your Honor. By the way, I also feel--See, there are different aspects of the case in the Supreme Court, but I might say this, and I suggested that in one of the motions that it may well be that it's these hearings before you that we might be able to resolve the custody and visitation issues so that they can be removed as an issue from the Supreme Court. I think at this particular time that probably would be best for both Mr. and Mrs. Duke, but more importantly, the children.

THE COURT: Well, I don't mind trying to do that, but I'm not going to set aside--unless there's agreement between the parties--any issues that are pending before the Supreme Court. I don't want to do that. Do you understand that?

MR. DUKE: Yes, Your Honor.

THE COURT: Is there a possibility of straightening those things out, visitations?



PENGAD CO., BAYONNE, N.J.

MR. DUKE: I believe so, Your Honor. The same as Mr. Lipsey. With a full hearing again possibly.

THE COURT: What's that?

MR. DUKE: I believe, like Mr. Lipsey, again it might be resolved right here all the issues before the Supreme Court. I believe that is because of her legal fees were not paid, equitable distribution on the house, and the custody. So I feel as though her legal fees-- And the second issue I think there was negotiable--I think only issue here is custody.

THE COURT: Well, custody is before the Supreme Court you said. Unless it can be agreed to here.

MR. LIPSEY: I know Mrs. Duke is going to agree to resolve this once and for all, because it's not helping either one of them.

THE COURT: Who was awarded custody?

MR. LIPSEY: Joint custody. And that's where the problem is. The interesting part of it is the record is replete with all kinds of problems between the parties. And, as a matter of fact, I know you would not recall----

THE COURT: Was it joint custody in Supreme Court?

MR. LIPSEY: It's up in Supreme Court.

THE COURT: It was awarded down here?

MR. LIPSEY: Yes. But that's not the problem. The joint custody problem probably is even more difficult



PENGAD CO., BAYONNE, N.J. 07002 · FORM 740

for the parties. The parties have difficulty with each other. At least one unilateral. Expecially when the Court was talking about trying to do that at fifty percent of the time with two young children, which created all kinds of difficulties to say the least.

THE COURT: Was that the Decision of the trial justice?

MR. LIPSEY: That's correct. I have no problem in trying to resolve that issue at this level. I think that's why I suggested it to Mr. Duke in previous correspondence. I think he might be better off resolving it at this point.

THE COURT: Well, are you willing to sit down and to try to resolve that issue with custody and visitation at this level as opposed to the Supreme Court?

MR. DUKE: There's a second issue.

THE COURT: What's that?

MR. DUKE: There's a second issue. That's the Motion To Reopen Trial. I feel as though there was evidence barred. There was evidence that was barred during the trial. And if it isn't heard, I feel as though issue should be bought up to the Supreme Court.

MR. LIPSEY: Original Appeal by the Defendant....

MR. DUKE: That one year statute is in June.

THE COURT: What do you mean, "one year statute"?

28

PENGAD CO., BAYONNE, N.J. 07002 · FORM 740

MR. DUKE: I was going to try to bring it under new evidence statute.

THE COURT: You mean reopen the case?

MR. DUKE: Yes.

THE COURT: You have to present that to the trial Judge, not to me.

MR. DUKE: I understand.

THE COURT: I have no authority to set aside or re-open the case.

MR. LIPSEY: There's another matter that goes in line with some of the motions we filed, and I just learned today as a matter of fact--Don't ask me why--I just learned today that Mrs. Duke has been on welfare and she's starting to work now as well which welfare knows about. So, hopefully, she will be going off welfare. But trial Judge made Order of Fifty ($50.00) Dollars a week support that probably was stayed by Supreme Court Appeal. And from what I understand, there was agreement between counsel before support, but no support is being paid. The State of Rhode Island is paying. Mr. Duke is employed by the City of Providence as a Fireman, plus he's a self-employed gardener, and it doesn't make any sense that no money is being paid for support.

MR. DUKE: There's a lien being placed on the house from welfare that's active since Your Honor put it on



PENGAD CO., BAYONNE, N.J. 07002 · FORM 740

last December 19th, a year and a half ago. So I believe the lien is still active.

THE COURT: You are not paying anything?

MR. DUKE: No, Your Honor. They appealed to the Supreme Court.

THE COURT: You mean the issue as to whether you should pay anything?

MR. DUKE: I haven't been ordered so, Your Honor. I understand, Your Honor, that the obligation is theirs.

THE COURT: What's that?

MR. DUKE: I understand, Your Honor, that obligation is theirs, but lien on house is still active.

THE COURT: But the trouble is that she can't eat that. The lien on the house does not put any bread on the table.

MR. DUKE: Well, Your Honor, I remanded the case down from Supreme Court on contempt of visitations. If at all possible, I like to be heard on contempt on visitations.

THE COURT: You have contempt as well?

MR. LIPSEY: Several motions. As I say, I would agree that both parties can be evaluated and matter continued and hear the rest of it by a psychiatrist in accordance to what you suggested a few moments ago.

THE COURT: What about contempt?

PENGAD CO., BAYONNE, N.J. 07002 · FORM 740

MR. LIPSEY: There's several motions. Contempt on our part. Contempt on his part. There's so many. I don't know. Half of his motions goes back to the time before the trial Justice decision on the matter heard then.

THE COURT: I cannot....

MR. DUKE: I understand. What I would like this Court to listen to is contempt. There was contempt motion filed after the final decision and they were continued. And even after last Order, after Appeal, there's been numerous visitations denials. I would like to now show a pattern, a design of the Plaintiff not being able to have the care, control and custody of the children and live up to the Court's Order as set forth.

THE COURT: You mean by who, Judge Crouchley?

MR. DUKE: By Judge Crouchley. And a second one. A vague Order which says twenty-four (24) hour notice.

THE COURT: Which what?

MR. DUKE: Which says that the Defendant shall give-- is to give twenty-four (24) hour notice on visitations. And that's too vague, Your Honor. It has not worked.

THE COURT: How long has this case been going on?

MR. LIPSEY: I've been in this case, I suppose, slightly less than a year.

THE COURT: 1982 case. I'll hear you on the contempt



PENGAD CO., BAYONNE, N.J. 07002 · FORM 740

motion. I may stop all visitations one way or the other until the Supreme Court makes a decision.

MR. LIPSEY: I do want you to know that my client is here. There has never been any objections to visitations. It's just some of the things that has happened surrounding visitations.

THE COURT: I understand. Maybe it would be better if we stopped all visitations until we get a firm Decision from the Supreme Court on what Judge Crouchley decided. Ordering no support being paid. I don't understand that. Any money being put in escrow?

MR. DUKE: As far as?

THE COURT: Are you putting any money aside?

MR. DUKE: No, Your Honor.

THE COURT: In case the Supreme Court sustains the Order Of Support?

MR. DUKE: No, Your Honor.

THE COURT: Why not?

MR. DUKE: I don't have any money to put aside, Your Honor.

THE COURT: Don't you get paid?

MR. DUKE: Yes, Your Honor. My mortgage is like Eight Hundred Fifty ($850.00) Dollars a month, Your Honor.

THE COURT: You mean mortgage on the home that your



PENGAD CO., BAYONNE, N.J. 07002 · FORM 740

wife is living in?

MR. DUKE: That I'm living in, Your Honor. I received marital domicile.

MR. LIPSEY: He was suppose to buy her out.

THE COURT: Has he paid her?

MR. LIPSEY: No, because the Appeal was stayed. He hasn't done anything. He's living in the house.

THE COURT: Eight Hundred Fifty ($850.00) Dollars a month?

MR. DUKE: Yes, Your Honor, Judge Crouchley and I discussed it very lengthly if house was affordable or not.

THE COURT: Doesn't sound to me like it's affordable.

MR. DUKE: Your Honor, I believe if you read Decision, the house--Judge Crouchley felt as though children would be living in the house four out of eight days, and that they would benefit from being in the environment. So I feel as though....

THE COURT: Four out of eight days?

MR. DUKE: Yes, Your Honor. I'm a Fireman, and Judge Crouchley awarded joint custody. Physical custody awarded according to my work schedule. Four out of eight days. My custody decision was on my work schedule.

THE COURT: To spend equal time with the children?

MR. LIPSEY: That's what the Decision says.



PENGAD CO., BAYONNE, N.J. 07002 · FORM 740

THE COURT: That has not been done?

MR. LIPSEY: No, no, no.

MR. DUKE: No, Your Honor. I have been denied two days a week, nine to six.

THE COURT: What?

MR. DUKE: Mr. Lipsey appealed to the Supreme Court. The Court's Order came up twenty-four hour notice. There is a disagreement between Mr. Lipsey and myself with visitations. So I agreed two days a week from nine to six, and I have been denied two days a week from nine to six. So that is also in issue.

THE COURT: Well, I'll hear that when I get to it. All right.

MR. LIPSEY: Then I will go back to Judge Goldberg. He's looking for me and I'll come right back.

THE COURT: All right.

(RECESSED)



PENGAD CO., BAYONNE, N.J. 07002 · FORM 740